**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

October 13, 2017

Martin S. Lessner, Esquire
James P. Hughes, Jr., Esquire
Tammy L. Mercer, Esquire
Richard J. Thomas, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Kevin G. Abrams, Esquire
John M. Seaman, Esquire
E. Wade Houston, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Brock E. Czeschin, Esquire
Nicholas R. Rodriguez, Esquire
Anthony M. Calvano, Esquire
Richards Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

RE:    ***Southpaw Credit Opportunity Master Fund, L.P. v. Roma Restaurant Holdings, Inc. et al.***, C.A. No. 2017-0059-TMR

Dear Counsel:

This Letter Opinion addresses Defendants Scott Wilson and Kenneth F. Reimer's Motion for Reargument.  Because the court did not misapprehend any issues of fact or law, the Motion for Reargument is denied.  Trial will occur on November 21, 2017 in the Southpaw Action.

## I.   BACKGROUND

On January 25, 2017, Southpaw Credit Opportunity Master Fund L.P. ("Southpaw") and Cloudybluff & Co. ("Cloudybluff"), in its capacity as the nominee of Northeast Investors Trust ("Northeast"), (collectively, the "Plaintiffs"), filed a complaint (the "Complaint") pursuant to 8 *Del. C.* § 225 against Roma Restaurant Holdings, Inc. ("Roma" or the "Company"), Scott Wilson, and Kenneth J. Reimer (Wilson and Reimer collectively, "Defendant Directors"), asking the Court to determine the proper board composition of Roma (the "Southpaw Action"). Wilson is a managing director of Highland Capital Management LP.[1] Plaintiffs allege that Wilson and Reimer were appointed to the Roma board by Highland Capital Management LP, Highland Loan Funding V Ltd., and Pamco Cayman Ltd. (collectively, "Highland"), acting through their nominee Hare & Co.[2]

As of October 7, 2016, Southpaw and Northeast together held 48.8% of outstanding Roma stock.[3] On November 30, 2016, Kenneth Myres, the former President and CEO of Roma, agreed to sell his 2.5% stake in Roma to Southpaw,

---

[1]   Compl. ¶ 1.

[2]   *Id.* ¶ 2.

[3]   *Id.* ¶ 36.

increasing Plaintiffs' total ownership to approximately 51.4% of the outstanding common stock. [4] On December 9, 2016, Roma issued a stock certificate reflecting the transfer of Myres's stock to Southpaw, but Roma did not deliver the stock certificate until December 21, 2016.[5] The next day, December 22, the Roma board purported to approve a new Long-Term Incentive Plan (the "LTIP") and issue 48,500 shares to the Company's officers pursuant to that plan (the "LTIP shares" or "LTIP issuances").[6] The LTIP issuances would have diluted Plaintiffs' holdings below 50%.

On December 30, 2016, Southpaw delivered a written consent to Roma, which purported to remove Wilson and Reimer from the Roma board and to appoint Howard Golden and Bradley Scher to the Roma board.[7] Roma refused to honor the consent under the theory that Plaintiffs did not hold a majority of outstanding stock as a result of the new LTIP issuances.[8] Plaintiffs filed the Complaint on January 25,

---

[4]     *Id.* ¶ 39.

[5]     *Id.* ¶¶ 45-46.

[6]     *Id.* ¶¶ 47-48.

[7]     *Id.* ¶ 1.

[8]     *Id.* ¶ 4.

2017, arguing that the LTIP issuances are invalid and void, or at the least voidable,[9] and thus, Golden and Scher are proper board members.[10] The parties submitted—and the Court approved—a case schedule and a status quo order. Trial was scheduled for May 25, 2017.[11] The parties conducted discovery, which included fourteen days of depositions in four states.[12]

On May 12, 2017, Defendant Directors filed a pre-trial brief and stated that they "will not assert at trial that the 2016 LTIP is valid."[13] At the pre-trial conference on May 18, Defendant Directors argued that "it's [not] necessary to go to trial to litigate . . . any issue regarding validity of LTIP."[14] Defendant Directors explained that while they were "not conceding that [the LTIP issuances are] invalid, . . . we don't want them. . . . We don't want the plan to remain in existence."[15] Instead, Defendant Directors claimed that while there were technical issues with Plaintiffs'

---

[9]   *Id.* ¶ 82.

[10]   *Id.* ¶¶ 5, 43.

[11]   Pls.' Opp'n Br. ¶ 2.

[12]   Pre-Trial Tr. 39.

[13]   Defs.' Pre-Trial Br. 4.

[14]   Pre-Trial Tr. 36.

[15]   *Id.* at 35.

written consents, Defendant Directors would allow Plaintiffs to "take action to correct [the] defective written consents,"[16] which would moot the Southpaw Action. In response, Plaintiffs submitted new written consents, which Roma and Defendant Directors accepted. Thereafter, the Court entered an order on May 30, 2017 (the "May 30 Order") (1) recognizing Plaintiffs' nominees as proper board members, (2) dismissing the action as moot, and (3) retaining jurisdiction to resolve a fee application.

On July 21, 2017, less than two months later, Defendant Directors' counsel filed a complaint on behalf of Highland, at which one of the Defendant Directors is a managing director. Highland claimed that it had validly voted the LTIP shares to place Defendant Directors back on the Company board (the "Highland Action").

Plaintiffs moved for relief from the May 30 Order, arguing that Defendant Directors had "abandon[ed] any defense of the supposed validity of the 2016 Plan during [the Southpaw Action] . . . only to invoke the validity of the 2016 Plan in another litigation a few months later, under cover of the Dismissal Order."[17] In a letter opinion dated August 22, 2017, I vacated the May 30 Order and allowed the

---

16      *Id.*

17      Mot. for Relief ¶ 19.

Southpaw Action to move forward. On August 28, 2017, Defendant Directors moved for reargument on grounds that the August 22 letter opinion misapprehended the law and the facts of the case. On September 5, 2017, Plaintiffs and Roma filed motions opposing reargument. Thereafter, the parties filed various letters relating to the Motion for Reargument and other issues.

In its opposition brief, Roma notes that it is cash-strapped, with only "approximately $2 million in cash and . . . [no] revolving credit facility."[18] Roma states that its financial difficulties would make a new round of discovery and multiple rounds of briefing in a different litigation extremely problematic.[19] Roma also informed the Court that Highland is offering additional funding to Roma in exchange for a Roma equity rights offering.[20]

## II. ANALYSIS

"To prevail on a motion for reargument under Rule 59(f), the moving party must demonstrate that the Court either overlooked a principle of law that would have controlling effect or misapprehended the facts or the law such that the outcome of

---

[18]     Roma's Opp'n Br. ¶ 18.

[19]     *Id.* ¶ 18 n.4.

[20]     *Id.*; *see also* Defs.' Letter 5 (Sep. 1, 2017).

the decision would be different."[21]  The "misapprehension of the facts or the law must be both material and outcome-determinative of the earlier decision."[22]

Defendant Directors contend that the Court's prior letter opinion overlooks issues of mootness, jurisdiction, standing, and a litany of other problems.  Each of Defendant Directors' arguments fail, and their recent behavior in connection with this Action and the Highland Action reflects the type of unacceptable gamesmanship that this Court rejects.

### A.     The Complaint Is Not Moot

Defendant Directors argue that the Complaint in the Southpaw Action is moot because "Golden and Scher were elected."[23]  To be clear, Golden and Scher were elected precisely because Wilson and Reimer refused to defend the LTIP on the eve of trial, at which the validity of the plan was to be addressed.  Defendant Directors cannot claim that this Complaint—originally brought to settle the elections of Golden and Scher *by contending that the LTIP was invalid*—is moot at the same time the investment fund employing one of the Defendant Directors *tries to vote the*

---

[21]     *In re Zale Corp. S'holder Litig.*, 2015 WL 6551418, at *1 (Del. Ch. Oct. 29, 2015) (citations omitted).

[22]     *Id.*

[23]     Mot. for Reargument ¶ 6.

*LTIP shares* in order to appoint Defendant Directors back onto the board.

The cases cited by Defendant Directors do not help their cause. *Palmer v. Arden-Mayfair* found mootness where "[t]here is no dispute as to the identity of the stockholders entitled to vote;"[24] here, the validity of the LTIP, and thus the stockholders who may vote, is at issue. In *General Motors Corp. v. New Castle County*, this Court held that "[a]ccording to the mootness doctrine, although there may have been a justiciable controversy at the time the litigation was commenced, the action will be dismissed if that controversy ceases to exist."[25] But, to borrow then-Vice Chancellor Chandler's words in *Oralco, Inc. v. Bradley*, Defendant Directors' "offer to [allow Golden and Scher be elected as directors] . . . operates only as a renunciation of a particular form of *relief* . . . and does not eliminate the fundamental dispute between [the parties] . . . over the validity of" the LTIP.[26]

The controversy between the parties is as alive today as it was on the eve of trial, and thus, the Complaint is not moot.

---

[24]    1978 WL 2506, at *7 (Del. Ch. July 6, 1978).

[25]    701 A.2d 819, 823 (Del. 1997).

[26]    1992 WL 1364574, at *2 (Del. Ch. Nov. 10, 1992).

B. **The Court Has Subject Matter Jurisdiction Over the Claims**

Defendant Directors contend that this Court lacks subject matter jurisdiction over the claims in the Southpaw Complaint because the claims are plenary and cannot be brought in a Section 225 action. The Defendant Directors add that necessary parties are not present to rescind the LTIP shares.[27]

Plaintiffs do not seek to rescind stock from anyone, so it is of no moment that the receivers of the LTIP shares are not defendants in this case. Instead, Plaintiffs ask the Court to determine whether the LTIP issuances were valid such that those shares should be counted in determining the proper composition of the Roma board. The Supreme Court of Delaware stated the applicable rule: "[i]n determining what claims are cognizable in a [Section] 225 action, the most important question that must be answered is whether the claims, if meritorious, would help the court decide the proper composition of the corporation's board."[28] In making this determination, Delaware case law is clear. The Court may examine the validity of an underlying transaction in a Section 225 case to the extent necessary to determine the proper board composition. In *Jackson v. Turnbull*, the Court observed that "it is frequently

---

[27]     Mot. for Reargument ¶ 9.

[28]     *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 199 (Del. 2011) (quoting *Agranoff v. Miller*, 1999 WL 219650, at *17 (Del. Ch. Apr. 12, 1999)).

the case that, in order to determine the rightful directors of a company, underlying transactions must be analyzed and resolved." [29]  In *Jackson*, "the question of whether the merger was void *ab initio* [was] critical to the § 225 decision and [so this Court] resolved" that issue.[30]  Similarly, this Court has resolved, among other things, the validity of stock issuances,[31] stock transfers,[32] stock conversions,[33] and stock acquisitions[34] in Section 225 actions in order to determine which votes should be counted in ascertaining proper board composition.

Defendant Directors cite a string of unhelpful cases for the proposition that this Court cannot resolve disputes regarding the validity of a stock grant in a Section 225 action.  Three of these cases stand for the proposition that this Court may examine the validity of the underlying transaction in a Section 225 case if that

---

[29]    1994 WL 174668, at *2 (Del. Ch. Feb. 8, 1994).

[30]    *Id.*

[31]    *Boris v. Schaheen*, 2013 WL 6331287, at *16 (Del. Ch. Dec. 2, 2013); *Keyser v. Curtis*, 2012 WL 3115453, at *25 (Del. Ch. July 31, 2012).

[32]    *Genger*, 26 A.3d at 194.

[33]    *Infinity Inv'rs Ltd. v. Takefman*, 2000 WL 130622, at *1 (Del. Ch. Jan. 28, 2000).

[34]    *Kahn Bros. & Co., Inc. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1988 WL 122517, at *5 (Del. Ch. Nov. 15, 1988).

examination would help the Court determine the proper board composition.[35] One

case takes no stance on the issue.[36] The final three cases cited do not involve Section

225 claims.[37] Moreover, this issue would have come up in the earlier Section 225

trial in this case had Wilson and Reimer not declined to defend the plan. It also must

be resolved in the Section 225 Highland Action if that action proceeds now, as

Defendant Directors request. Delaware law grants this Court the authority to

consider the validity of the LTIP issuances in a Section 225 action to decide the

proper composition of the board, and thus, the Court has subject matter jurisdiction

to hear the Southpaw Action claims.

---

[35] *Genger*, 26 A.3d at 199 ("Genger contends that adjudicating the validity of the 2004 Transfers . . . exceeded the Court of Chancery's jurisdiction[.] . . . [The Court] reject[s] [this argument]."); *Agranoff*, 1999 WL 219650, at *18 ("The plaintiff's corporate opportunity and tortious interference claims are cognizable in this § 225 action because they bear directly on [the director's] entitlement to office."); *In re Diamond State Brewery*, 2 A.2d 254, 257 (Del. Ch. 1938) (The Court allows plaintiff to bring a claim under a predecessor statute to Section 225 "that stock cannot vote on the ground that it was illegally issued.").

[36] *Marks v. Menoutis*, 1992 WL 22248, at *5 (Del. Ch. Feb. 3, 1992) (When considering a motion to amend the answer to add a counterclaim challenging the validity of an underlying transaction, the Court declined to "intimate [a] view at all on that issue . . . [because] [s]ubstantial time has already been devoted to [this case, and the] purpose of § 225 is to afford an expeditious determination of the corporation's directors and officers.").

[37] *IMO Daniel Kloiber Dynasty*, 98 A.3d 924 (Del. Ch. 2014); *In re Nat'l Auto Credit, Inc. S'holder Litig.*, 2003 WL 139768 (Del. Ch. Jan. 10, 2003); *Russell v. Morris*, 1990 WL 15618 (Del. Ch. Feb. 14, 1990).

### C.  Southpaw Has Standing to Assert the Claims Against the Former Directors

Defendant Directors argue that Southpaw may not assert claims against them because "the proper defendant in a suit for prospective relief is the party prepared to enforce the relevant legal rule against the Plaintiff."[38]  But Plaintiffs do not seek to have Defendant Directors enforce any prospective relief; Plaintiffs instead ask the Court to decide whether the LTIP was valid in order to establish whether the LTIP shares should be counted when determining the Roma board composition. Defendant Directors provide the adversarial relationship in this case.  Should Defendant Directors again decline to defend the plan, the Court will take this as an admission that the plan was void when issued, as argued by Southpaw.[39]  To the extent that enforceability of the Court's ruling is an issue, the Company remains party to this action.

### D.  Defendant Directors Have Engaged in Gamesmanship

At pre-trial conference on the eve of trial, Defendant Directors said that they would not defend the validity of the LTIP.  In response, Plaintiffs pleaded with me to find the LTIP invalid so that the Defendants could not later claim that the LTIP

---

[38]  Mot. for Reargument ¶ 16 (quoting *Camreta v. Greene*, 563 U.S. 692, 727 (2011)).

[39]  *See, e.g., Infinity*, 2000 WL 130622, at *5.

shares were voted to remove or elect directors.[40]  In support of this request, Plaintiffs pointed me to *Infinity Investors Ltd. v. Takefman*.[41]  In *Infinity*, "the individual defendants admit[ted] that they [were] no longer directors."[42]  But the Court found that admission

> somewhat elliptical and, based on . . . reading . . . defendants' motion to dismiss, [it] comes with certain implicit caveats.  Early in this litigation, [the former directors] refused to acknowledge the validity of the election of their replacements.  Indeed, they vigorously contested it.  In mid-September, they had a change of heart.  Now, they repeatedly plead that they have "resigned" their board seats, will not seek to regain them, and have come to "*accept their termination* as officers and seek only the severance payments required under their employment contracts with the Company."  What is implicit in, though patently clear from, defendants' motion is that they are loath to admit the validity of the stock conversion.  Their reluctance, however, is logically and legally untenable.  Defendants insist that they do not (and will not) contest the legal sufficiency of the currently constituted . . . Board of Directors.  The currently constituted . . . Board, however, is in place *solely by virtue of Infinity's stock conversion* and the subsequent corporate action Infinity took in conjunction with Marion.[43]

---

[40]     Pre-Trial Tr. 13-31.

[41]     2000 WL 130622.

[42]     *Id.* at *4.

[43]     *Id.* at *4-5.

Chancellor Chandler further noted that "dismiss[ing] this claim merely because the defendants purported to resign after their removal, while allowing them to question the validity of the conversion and subsequent election . . . would reward gamesmanship."[44] Instead, "[a]s equity looks to the intent rather than to the form, this Court should not permit parties to manipulate procedural rules for the purpose of avoiding resolution on the merits."[45] Chancellor Chandler then held that the defendants' refusal to defend the conversion was an admission that the conversion was invalid, and they could not contest the issue in later cases.[46]

I asked counsel for Defendant Directors at that hearing whether we were in an *Infinity* situation.[47] In response, counsel assured me that this was not the same as *Infinity*, because there "you had two directors . . . who conceded the seats but wanted to continue the challenge . . . . We don't think that's what we're doing."[48] Counsel urged me not to rule on the validity of the LTIP due to potential negative tax

---

[44] 2000 WL 130622, at *5.

[45] *Id.*

[46] *Id.*

[47] Pre-Trial Tr. 44.

[48] *Id.* at 45.

ramifications for the employees to whom stock was issued.[49]   Relying on the representations made to me, I lifted the stay to allow a new written consent.  The new written consent was delivered on May 19, 2017, and Roma and Defendant Directors did not challenge it.  Thus, on May 30, 2017, I entered an order recognizing Plaintiffs' directors as proper board members, but I did not address the validity of the LTIP.

Defendant Directors appear to have read *Infinity* and, instead of bringing suit themselves, had the investment fund at which one of the Defendant Directors is a managing director file a new complaint.  While I also will not countenance such gamesmanship, I need not go as far as Chancellor Chandler in *Infinity*.  This Court has before it in the Southpaw Action a live, active controversy complete with Complaint, proper jurisdiction, and proper parties; we will proceed to trial in that action.[50]

---

[49]   *Id.* at 37.

[50]   Defendant Directors ask to "know the nature of the claims and relief sought" in this Action.  Mot. for Reargument ¶ 8.  It is what it has always been.  Plaintiffs brought this Section 225 action to determine the proper composition of the Roma board.  At the heart of that question is the validity of the LTIP issuances.  This question was presented in Plaintiffs' original complaint and pre-trial briefing, and it remains unanswered.  Compl. ¶ 82; Pls.' Pre-Trial Br. 39, 43.

> ### E.   There Are No Other Misapprehensions of Fact or Law, and Trial in the Southpaw Action Is the Most Efficient Use of Resources

Defendant Directors raise a litany of other objections that do not hold water. First, Defendant Directors contend that Southpaw improperly asserted its Rule 54(b) argument for the first time on reply.[51]  Southpaw asserted its Rule 54(b) argument in response to Defendant Directors' argument that Rule 60 does not apply.  Second, Defendant Directors argue that their acceptance of Southpaw's nominees on the board "says nothing about whether Southpaw was a majority stockholder in May 2017;"[52] but, Defendant Directors' acceptance-nonacceptance dance is impermissible gamesmanship, as discussed above.  Third, Defendant Directors contend that this Court's May 30 Order was not "predicated entirely on Defendants' representations that they would not defend the validity of the 2016 plan and their concession that Plaintiffs held a majority of Roma's voting stock."[53]  They are wrong. This Court did in fact base its May 30 Order on Defendant Directors' representations that this was not an *Infinity* situation and would have proceeded to trial in that case had it known that Defendant Directors' would create the situation

---

[51]    Mot. for Reargument ¶ 24.

[52]    *Id.* ¶ 27.

[53]    *Id.* ¶ 29.

that now exists. Fourth, Defendant Directors aver that the claims are outdated because "Southpaw controls the Company" and "the Board awarded its outside directors triple the pay of previous outside directors."[54] The fact that Southpaw controls the Company and the Board altered its pay practices to outside directors does not bear on whether the LTIP shares were validly issued and, thus, may be counted when determining the proper composition of the board.

Fifth, and finally, Defendant Directors argue that the factual record in the Southpaw Action is insufficient to adjudicate the issue of later ratification of the plan, and thus, it is inefficient to proceed in the Southpaw Action.[55] I find that resolving the validity of the LTIP issuances in the Southpaw Action is the most efficient use of resources. The Court and the parties were ready for trial once before, and we can pick it up where we left off. A finding at trial that the grants were valid likely resolves both the Southpaw and the Highland Actions and results in Defendant Directors' appointment to the board. A finding at trial that the LTIP issuances were void also likely resolves the Southpaw and the Highland Actions, and none of the arguments in the Highland Action would change this outcome. Should I find the

---

[54] *Id.* ¶¶ 36-37.

[55] *Id.* ¶ 39.

LTIP issuances invalid but voidable, Highland may pursue their ratification arguments in the Highland Action.

In light of this setup, the parties need not undertake further discovery. Discovery for the first attempt at trial closed May 3, 2017.[56] The record before the May 18 pre-trial conference was sufficiently developed to hold trial on the validity of the LTIP, and it remains sufficiently developed now. Should I find the LTIP issuances invalid but voidable, Highland may undertake discovery on the issue of ratification in the Highland Action. The parties may work out amongst themselves whether trial on a paper record is appropriate and agreeable.

## III. CONCLUSION

For these reasons, I deny Defendant Directors' Motion for Reargument. The Southpaw Action will proceed to trial scheduled for November 21, 2017. No further discovery is warranted in this action before trial.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*
Vice Chancellor

---

[56] Order Governing Case Schedule 2.